# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| WILLIAMS BOULEVARD SERVICE, INC., d/b/a Williams Blvd Amoco, <br><br> Plaintiff, <br><br> vs. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendant. | No. C22-107-LTS-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before me on a motion (Doc. 10) for summary judgment filed by defendant State Farm Fire and Casualty Company (State Farm). Plaintiff Williams Boulevard Service, Inc., d/b/a Williams Blvd Amoco (Williams Boulevard) has filed a resistance (Doc. 11, 14) and State Farm has filed a reply (Doc. 15). Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

Williams Boulevard filed this action in Iowa District Court for Linn County on August 9, 2022. *See* Doc. 1-3. On September 14, 2022, State Farm removed the case to this court based on diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1441. Doc. 1.

Williams Boulevard alleges that on April 10, 2020, it sustained property damage as the result of a severe windstorm, known as a "derecho," that impacted a large portion of Iowa. As a result of the damages to its property, Williams Boulevard contacted its insurer, State Farm. State Farm sent an adjuster to review the property and determined

the initial estimate of loss was $22,620.41. Williams Boulevard disputed that this amount covered the entire scope of damage. It began contacting construction companies and contractors to secure bids and estimates as to the repair costs and alleges it spent more than $80,000 to repair the property. Additionally, Williams Boulevard claims loss of business income and losses related to spoiled food due to the lack of refrigeration caused by the power outage. Williams Boulevard asserts claims of breach of contract and bad faith against State Farm based on its refusal to pay its full losses.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

2

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## IV. RELEVANT FACTS

The following facts are undisputed for purposes of this motion, except where indicated otherwise.

On August 10, 2020, a derecho hit the Cedar Rapids, Iowa, area resulting in damage to Williams Boulevard's gas station and convenience store (the Property). On August 12, 2020, Williams Boulevard made a timely claim to State Farm pursuant to its business owner's insurance policy (Policy) for the damage. On August 20, 2020, State Farm sent Carolina Barragan[1] to inspect the Property. On August 30, 2020, Barragan estimated the replacement cost value (RCV) before the $5,000 deductible and depreciation as $26,630. She indicated $0 to be paid for losses to the business personal property, as Williams Boulevard did not seek coverage for personal property until this lawsuit. On August 31, 2020, Barragan spoke with Amrik Bhangu, the owner of Williams Boulevard, regarding additional information that was necessary to evaluate the claim, particularly from Williams Boulevard's contractor. State Farm issued a payment of $17,620.41 on August 31, 2020.

On July 24, 2021, State Farm received several invoices from Williams Boulevard regarding completed work on the Property. State Farm contacted Bhangu by phone and followed up by letter requesting that certain invoices be itemized. On July 30, 2021, State Farm contacted Bhangu to go over payment details and left a voicemail. On August 6, 2021, State Farm sent a supplemental payment of $3,472.44.

With regard to roof replacement, Williams Boulevard states it submitted an estimate to State Farm for a shingle roof replacement, which was $29,700. Williams Boulevard replaced the roof with an upgraded metal roof, but seeks payment based only on the replacement cost of a shingle roof. On September 23, 2021, Bhangu and State Farm discussed the claim. Bhangu's position was that State Farm had failed to indemnify

---

[1] Barragan worked for Alacrity Claims Service, with whom State Farm had contracted.

4

Case 1:22-cv-00107-LTS-KEM    Document 16    Filed 11/17/23    Page 4 of 19

him for actual costs incurred to make repairs for damages to the Property. He noted the repairs exceeded $80,000. State Farm asked Bhangu to send any additional invoices.

On September 25, 2021, State Farm informed Bhangu that it had not received a final invoice from Cedar Valley Heating, Air Conditioning, & Plumbing. Williams Boulevard denies this, stating that Bhangu had paid the invoice and therefore it was "final," and that Bhangu had sent State Farm multiple invoices and receipts for work done to repair the Property. Williams Boulevard maintains that State Farm's claim notes indicate it had notice of the expenditures in 2021 that are still being sought now.

State Farm maintains that several of the invoices provided by Williams Boulevard were not complete or provided for upgrades that were not covered by the Policy. Williams Boulevard disputes this, noting that the invoices provided were those that Bhangu had received from the contractors. Williams Boulevard also notes that the amount actually paid to contractors was not consistent with the State Farm estimate that had been created as a result of Barragan's visit in August 2020, and State Farm had used that estimate to deny the difference. Williams Boulevard notes there was also a dispute between State Farm and Williams Boulevard's contractors concerning whether the canopy, gutters, fascia and other roofing materials were damaged. On September 30, 2021, State Farm issued a supplemental payment of $11,012.20 for remaining covered items and closed the claim.

On July 22, 2022, Bhangu again sent receipts for work completed in August 2021. State Farm determined these documents had been previously addressed and were covered by the September 30, 2021, payment. It determined there were no outstanding payments owed and the claim remained closed. To date, State Farm has paid Williams Boulevard $32,105.05 on its claim.

Bhangu itemizes his damages as follows:

5

| Contractor | Scope of Work | Cost of work |
|---|---|---|
| Allied Glass | Replaced front door | $1,500 |
| Cedar Valley Heating | Cut and reshape metal overhang to make it usable to start selling/pumping gas | $961.93 |
| CR Signs | Fixed price signs and BP Helious signs | $13,357.18 |
| Pipeco Petroleum | Repaired 2 Pinpads and installed new register | $3,881.81 |
| Wagner Heating Cooling | Fixed heating tubes and cooler (outside unit) and vacuumed the RepAm | $2,300.00 |
| Starey Fascia | Repaired Canopy (sheet metal repairs) | $26,532.55 |
|  | Repair/Replace Roof | $29,700 |
| **Total** |  | **$78,233.47** |

Williams Boulevard notes that State Farm was aware of additional damages claimed by Bhangu, including $500-$600/day of lost profit/loss of use while the business was closed and without power, along with a $450 loss of refrigerated items. Williams Boulevard admits it did not file a claim for these items but states that State Farm never informed it that it had coverage for such items. State Farm notes that Williams Boulevard never made a request for a copy of the Policy. The first time Williams Boulevard made a claim for these items was through this lawsuit.

State Farm asserts that it has compensated Williams Boulevard for the work performed by Pipeco, Allied Glass, Cedar Valley Heating and for repairs to the canopy and signs, excluding any upgrades. The parties dispute whether all work to the canopy

and signs constituted a repair or involved an upgrade. Bhangu states he provided all the support he had for those payments and testified that the work was not for upgrades but to repair the equipment to its pre-loss condition. He states that he provided State Farm numerous invoices and opinions that stated such repairs were not upgrades but were necessary to repair damages that occurred as a result of the derecho. The parties also dispute whether Williams Boulevard ever submitted a proof of lost income or loss of frozen/time sensitive inventory to State Farm. Williams Boulevard maintains that State Farm never informed it of this coverage under the Policy or provided a proof of loss form. In any event, Williams Boulevard noted that Bhangu supplemented his deposition testimony in amended answers to interrogatories regarding these losses.

As to other repairs, State Farm states that Williams Boulevard did not provide requested itemizations. These included an itemization for an upgraded roofing estimate, a separate estimate for car wash repairs and an itemized invoice from Wagner. Williams Boulevard states the Policy does not require itemization or a proof of loss when State Farm promises to provide forms but does not make those forms available. Williams Boulevard also notes that State Farm never sent out an additional individual to review or assist in the adjustment of the loss. Further, Williams Boulevard provided all of the invoices it had related to repairs for damages and understood that only one of those invoices (the metal roof to replace the shingled roof) was an "upgrade."

Regarding the roof, contractors for Williams Boulevard and State Farm disagreed on the scope/number of shingles and matching requirements for a roof, which led to a disagreement on cost. State Farm states that in light of this disagreement, it requested an updated estimate from Williams Boulevard's roofing contractor, which was never provided. Williams Boulevard argues an updated estimate was not necessary because its contractor confirmed the estimate was based on actual work and the repairs accounted for were necessary to repair all of the damaged sections of the roof caused by the storm.

Williams Boulevard states it spent over $80,000 to complete needed repairs and reopen its business. State Farm disputes that all of these "repairs" were covered by the

7

Policy and maintains that some of the work done constituted upgrades to the Property. It also asserts that Williams Boulevard failed to provide supplemental information to State Farm to support its claim for any additional payments.

## V. ANALYSIS

State Farm seeks summary judgment as to both of Williams Boulevard's claims (breach of contract and bad faith). I will address each in turn.

### A. *Breach of Contract*

State Farm argues Williams Boulevard's breach of contract claim fails because State Farm has paid all amounts due under the Policy. Williams Boulevard argues this is a disputed fact and that it has produced sufficient evidence from which a jury could conclude otherwise. Specifically, Williams Boulevard argues that it incurred more than $85,000 in damages and repair payments, for which it has received only $32,015.05 from State Farm, and that State Farm's failure to timely adjust and pay the loss constitutes a further breach of contract that has caused additional consequential damages.

To prevail on a breach of contract claim under Iowa law,[2] a plaintiff must prove:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa-Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993)). A party breaches a contract when, without legal excuse, the party fails to perform any promise that forms a whole or a part of the contract. *Id.* (citing *Magnusson Agency v. Public Entity Nat'l Co. Midwest*, 560 N.W.2d 20, 27 (Iowa 1997)).

---

[2] Neither party contends that the law of any other state applies in this diversity action.

8

Because "insurance policies are contracts between the insurer and insured, [they] must be interpreted like other contracts, the objects being to ascertain the intent of the parties." *Talen v. Employers Mut. Cas. Co.*, 703 N.W.2d 395, 407 (Iowa 2005). "If the language of the policy is unambiguous, . . . that intent is determined by what the policy itself says." *Monroe County v. International Ins. Co.*, 609 N.W.2d 522, 525 (Iowa 2000). "An ambiguity exists when, after application of our relevant rules of interpretation, a genuine uncertainty results as to which of two or more meanings is proper." *Am. Fam. Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 576 (Iowa 2004), *amended on denial of reh'g* (May 6, 2004). "When two reasonable interpretations exist, the policy is construed most favorably to the insured." *Id.* However, courts "will not give a strained or unnatural reading to the words of the policy to create ambiguity where there is none." *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 99 (Iowa 1995), *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784 (Iowa 2000).

The party claiming entitlement to coverage under a policy must prove compliance with its terms. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991); *Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 579 (Iowa 1987); *Henschel v. Hawkeye–Security Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970); *Henderson v. Hawkeye–Security Co.*, 106 N.W.2d 86, 91 (Iowa 1960). The party claiming coverage may meet this burden of proof by showing: (1) substantial compliance with the condition precedent; (2) the failure to comply was excused or waived; or (3) the failure to comply was not prejudicial to the insurer. *Am. Guar.*, 467 N.W.2d at 228; *Henderson*, 106 N.W.2d at 92. Under Iowa law, waiver is "the intentional relinquishment of a known right." *Huisman v. Miedema*, 644 N.W.2d 321, 324 (Iowa 2002) (quoting *State v. Hallum*, 606 N.W.2d 351, 354 (Iowa 2000)). Further, an insured's violation of a condition precedent is presumed to be prejudicial to the insurer. *Met–Coil Sys. Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 658 (Iowa 1994); *Am. Guar.*, 467 N.W.2d at 228. However, the insured may rebut the presumption if it shows

9

the lack of prejudice by satisfactory evidence. *Met–Coil*, 524 N.W.2d at 658; *Western Mut. Ins. Co. v. Baldwin*, 137 N.W.2d 918, 925 (Iowa 1965).

Williams Boulevard relies on evidence that it paid more than $80,000 for repairs and states that under the Policy, State Farm promises to either:

(a) Pay the value of the lost or damaged property;
(b) Pay the cost of repairing or replacing the lost or damaged property;
(c) Take all or any part of the property at an agreed or appraised value; or
(d) Repair, rebuild or replace the property with other property of like kind and quality.

Doc. 10-3 at 35. In addition to the repairs, Williams Boulevard argues that it suffered business income interruption and spoilage damages raising the amount to $85,763.28 and that State Farm was required to inform Bhangu of this available coverage and provide a proof of loss form. It also asserts that State Farm's failure to timely adjust and pay the loss is a further breach of contract that caused consequential damages. It notes that State Farm admits Williams Boulevard has complied with all conditions imposed under the Policy. Doc. 11-1 at 16.

State Farm argues that merely because Williams Boulevard paid $80,000 for repairs does not demonstrate that all of these items were covered by the Policy. State Farm notes that to determine whether these repairs were covered by the Policy, it requested that Bhangu submit certain itemized invoices but that he failed to do so. A similar issue occurred with regard to a disagreement over the number of shingles necessary to repair the roof. State Farm requested an updated estimate from Williams Boulevard's roofing contractor to clarify his position, but State Farm never received this estimate and therefore was unable to evaluate that expense under the Policy. As such, State Farm paid Williams Boulevard based on State Farm's adjuster's estimate for the roof.

State Farm argues that a dispute as to the amount of damage is not a breach of State Farm's obligations under the Policy. *See Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988) ("Where a claim is 'fairly debatable,' the insurer is entitled to debate it,

10

whether the debate concerns a matter of fact or law."). It argues that a delay based on a dispute to the amount owed also does not constitute a breach of contract. *See* Iowa Admin. Code rule 191-15.41(6) (requiring payment within a set period of time, but only when the "amount of the claim is determined and not in dispute."). With regard to the alleged business income interruption and spoilage damages, State Farm points out that Williams Boulevard does not claim that State Farm refused to provide Bhangu a copy of the Policy or a proof of loss form, or that Bhangu ever requested either document. It asserts that Williams Boulevard cites no authority to suggest that the insured has no obligation to review its own policy and determine what coverage it has or that the insured has no duty to provide information to further its insurance claim. State Farm contends it cannot be held liable for breach of contract by requiring support for claimed damages or by failing to pay for items not supported or never claimed by the insured.

"The existence and terms of a contract and whether the contract was breached are ordinarily questions for the jury." *Davenport Bank & Trust Co. v. State Cent. Bank*, 485 N.W.2d 476, 480 (Iowa 1992). Here, there are multiple disputed facts concerning whether State Farm has paid all amounts due under the Policy and, thus, whether it has breached the Policy. While State Farm asserts it has paid all amounts it believes are due, Williams Boulevard has presented evidence, including testimony, a sworn declaration and invoices paid by Williams Boulevard, that could allow a reasonable jury to conclude that State Farm was obligated to pay more under the terms of the Policy. State Farm's reasons as to why it does not owe more also involve fact issues including whether certain repairs were upgrades and whether the documentation supplied by Bhangu was sufficient for State Farm to evaluate whether the repair was covered by the Policy. In sum, there are numerous factual issues that would require findings concerning the weight and credibility of evidence that preclude summary judgment on the breach of contract claim.

### B. Bad Faith

State Farm argues Williams Boulevard's bad faith claim fails as a matter of law. Similar to the breach of contract claim, the bad faith claim is based on State Farm's denial of parts of Williams Boulevard's claim. State Farm contends it denied certain upgrades and items of damage that Williams Boulevard never submitted to State Farm. Williams Boulevard also alleges bad faith based on delayed payments. State Farm asserts that it did not reject parts of Williams Boulevard's claim outright, but requested updated invoices and estimates to evaluate whether they were for covered repairs to the Property, but that the invoices provided were either too vague to determine the scope of work or not itemized. It contends that any delays in the claim handling were attributable to Williams Boulevard and its failure to timely provide the requested invoices. After invoices were submitted and reviewed, State Farm states it informed Williams Boulevard of the deficiencies in those invoices and Williams Boulevard waited over nine months to have its insurance agent contact State Farm and express dissatisfaction with the claim handling process. State Farm asserts it diligently investigated Williams Boulevard's claim and paid it in full.

In response, Williams Boulevard asserts that State Farm has violated no fewer than eight standards of conduct for settlement practices under Iowa Code § 507B.4(3)(j). He asserts that no matter how many times he had contractors work with State Farm or sent in receipts of amounts actually paid, State Farm gave him the run-around. He relies on the fact that State Farm failed to pay expense amounts actually incurred for repairs and paid to third-party contractors. He argues the failure to pay these amounts and State Farm's delays has not been fairly debatable and that State Farm's adjustment of the loss has been objectively and substantively unreasonable.

To prevail on a first party bad faith insurance claim pursuant to Iowa law, a plaintiff must show "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis." *Thorton v. American Interstate Insurance Company*, 897 N.W.2d 445,

12

461-62 (Iowa 2017) (quoting *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002)). The first element is objective and the second element is subjective. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

With regard to the first element, "[a] reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law." *Bellville*, 702 N.W.2d at 473. This issue may be decided as a matter of law. *Id.* A claim is "fairly debatable when it is open to dispute on any logical basis . . . . Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable." *Bellville*, 702 N.W.2d at 473. Because the first element's focus is on whether there was a debatable issue, it is not dispositive if the insurer's position was ultimately incorrect. *Id.* Instead, the dispositive question is whether a fairly debatable claim existed. *Id.* When "an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law." *Id.* at 474 (emphasis in original). Courts do not weigh the evidence an insurance company considered; they determine simply whether evidence existed to justify the company's denial of the policyholder's claim. *Id.*

Even if a policyholder shows that the insurance company lacked an objective reasonable basis to deny the claim, bad faith liability attaches only if the insurance company "knew or should have known that the basis for denying its insured's claim was unreasonable." *Id.* "An insurer's negligent or sub-par investigation or evaluation of a claim is relevant to the fact finder's determination of whether the insurer should have known its denial lacked a reasonable basis." *Id.* However, an improper investigation alone "is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." *Id.* (cleaned up).

With regard to the first element – whether there was a reasonable basis for denying the full benefits Williams Boulevard claims – Williams Boulevard argues State Farm has

13

violated Iowa Code §§ 507B.4(3)(j)(2), (3), (4), (5), (6), (7) and (12),[3] as well as Iowa Admin. Code r. 191-15.41, 15.42(4) and 15.44(1)(b). Notably, Williams Boulevard acknowledges that any such violations are not per se evidence of bad faith, but evidence that may be relevant as to whether the conduct was objectively reasonable. *See B & F Jacobson Lumber & Hardware, L.L.P. v. Acuity*, 852 N.W.2d 20, at *9 (Iowa Ct. App. 2014) (table) (concluding that Iowa Admin. Code r. 191-15.41(10) "establishes a standard of conduct, the violation of which could – together with other evidence – form the basis of a conclusion that the conduct was not objectively reasonable.").

Williams Boulevard focuses on two primary arguments as to why State Farm did not have a reasonable basis for denying payment beyond the $32,015.05: (1) State Farm has long possessed receipts of amounts actually paid by Williams Boulevard and (2) there was no dispute this was a covered loss. It contends that any argument concerning "upgrades" to the Property is a non-starter because Williams Boulevard seeks

---

[3] These identify the following unfair claim settlement practices:
- failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
- failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
- refusing to pay claims without conducting a reasonable investigation based upon all available information;
- failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
- not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, or failing to include interest on the payment of claims when required under paragraph "p" or section 511.38;
- compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than amounts ultimately recovered in actions brought by such insureds and
- delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

indemnification only for the value of roof replacement for shingles and not the metal roof upgrade. Williams Boulevard argues it was objectively unreasonable for State Farm to rely on its own $13,000 roof repair cost estimate because this amount was only for work necessary to replace a portion of the roof, which is contrary to Iowa's line-of-sight rule and State Farm's own policies. *See* Iowa Admin. Code r. 191-15.44(1)(b).

Based on the record before me, State Farm has shown, as a matter of law, that its decisions concerning Williams Boulevard's claim are at least fairly debatable. State Farm states Williams Boulevard did not provide requested itemizations for an upgraded roofing estimate, a separate estimate for car wash repairs and an itemized invoice from Wagner. *See* Doc. 10-5 at 14. The invoices in the record do not appear to be itemized. For instance, the invoice from the roofer contains itemized materials, but no amounts. *See* Doc. 11-2 at 20. Rather, the total of $29,700 is based off a total labor estimate of $17,198.24 and total materials estimate of $12,501.76. *Id.* State Farm noted in its claim notes that this:

> Does not separate materials & labor on each line item. Lump sum of labor totaling $17,198.00 but no indication what it is applied to. Tear off & materials lumped together totaling $12,501.76. Called CTR explain need line by line items to compare. NO answer LVM.

Doc. 10-3 at 109. It also noted multiple discrepancies between the State Farm estimate and contractor's estimate. *Id.* As State Farm explains, the reason an itemized estimate was requested was because Williams Boulevard's contractor and State Farm's contractor disagreed on the number of shingles that would be needed for the roof, which led to a disagreement on cost. As such, State Farm requested an updated estimate from Williams Boulevard's contractor. When State Farm did not receive an updated estimate, it paid Williams Boulevard the amount of State Farm's adjuster's estimate for the roof.[4]

---

[4] This estimate indicates it was for 30.34 square feet of shingles while Williams Boulevard's contractor estimated 42 square feet. *See* Docs. 10-3 at 109; 10-5 at 1.

The Wagner invoice, which appears to be the only invoice related to car wash repairs, lists: "car wash tub[e] heater replacement" for $1,850 and "mitigation for roof damage" for $450. *Id.* at 21. State Farm's claim notes state with regard to this invoice: "made call advised to SP to advise we need itemized estimate separating materials and labor, sq ft of each room, equipment used & time for mitigation. No answer LVM advising the same." Doc. 10-3 at 109. State Farm sent Williams Boulevard a letter dated July 24, 2021, noting that it would give its claim further consideration upon receiving certain specified documents. *See* Doc. 10-5 at 14. Williams Boulevard has not submitted evidence demonstrating that each of these requested materials was provided. State Farm has identified a reasonable basis for seeking additional documentation and withholding additional payment until the bases for such repairs were confirmed by the requested itemizations and documentation.

Even if the jury ultimately decides that State Farm should have paid more, that verdict would not establish bad faith under Iowa law. *See Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 474 (Iowa 2005) ("[c]ourts and juries do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim."). State Farm has demonstrated, as a matter of law, that the evidence established a reasonable basis for it to question and dispute the basis and nature of repairs made by Williams Boulevard in determining how much was owed under the Policy. State Farm is therefore entitled to summary judgment as to Williams Boulevard's bad faith claim.

## C. *Consequential and Punitive Damages*

Williams Boulevard seeks consequential damages based on State Farm's alleged delay in payments.[5] It argues that reasonably foreseeable damages included a lift rental that was necessary to perform restoration work on the damaged roof, loss of business income from the closure of the car wash and convenience store and loss of perishable food items due to the power outage. It also argues that pre-suit attorney fees and the filing fee may also be considered as consequential damages. Williams Boulevard asserts that whether such damages were contemplated by the parties is an issue for the jury.

State Farm argues that Williams Boulevard has never identified or itemized these damages and, in any event, Iowa law does not allow recovery of consequential damages on a breach of insurance contract claim. It notes that no special circumstances existed at the time the parties entered into the contract such that State Farm understood it would be subject to damages outside the contract in the event of a breach of contract claim. *See Brown Twp. Mut. Ins. Ass'n v. Kress,* 330 N.W.2d 291, 298-99 (Iowa 1983) (consequential damages for breach of an insurance policy are not available in the absence of such special circumstances); *R&C Industries, Inc. v. Nationwide Mut. Ins. Co.*, 735 N.W.2d 204 (Iowa Ct. App. 2007) (unpublished) (neither punitive damages nor consequential damages are available for breach of an insurance policy in the absence of bad faith).

I agree with State Farm that Williams Boulevard is not entitled to recover consequential damages on its breach of contract claim. However, it is not entirely clear that all of the "consequential damages" alleged by Williams Boulevard are appropriately characterized as such. Williams Boulevard seems to allege that they were the result of State Farm's failure to timely adjust and pay the loss, which would cause them to be

---

[5] Williams Boulevard appears to seek consequential damages only as to its breach of contract claim. If sought in relation to its bad faith claim, such damages would fail on the same basis as its claim for punitive damages.

consequential damages. However, Williams Boulevard argues in other parts of its response that some of these losses, such as business income and food items, are losses covered by the Policy that were the result of the derecho and the resulting power outage, not any delayed payment by State Farm. *See* Doc. 11-2 at 4. With regard to the lift rental, Bhangu states:

> I rented a lift as soon as I could, as I knew that resources were scarce with so much damage in the area. I understood that I would not be able to repair the roof without the lift, and so rented it for months and months even before the roof repairs started. This cost approximately $3,000.

*Id*. at 5. As such, while Williams Boulevard will not be permitted to recover consequential damages, there remains an issue of fact as to which elements of its damages claim fall within this exclusion. The parties may address this issue in their trial briefs and/or motions in limine in advance of trial.

With regard to punitive damages, Iowa law requires an independent tort – above and beyond a mere breach of contract – in order to sustain a claim for punitive damages. *See e.g.*, *White v. Nw. Bell Tel. Co.*, 514 N.W.2d 70, 78 (Iowa 1994). *See also Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc.*, 50 N.W.2d 153, 156 (Iowa 1993) ("[A] breach of contract alone, even if intentional, will not form the basis for punitive damages."). As explained above, I have found that State Farm is entitled to summary judgment on Williams Boulevard's bad faith claim as State Farm had an objectively reasonable basis to deny additional payment on Williams Boulevard's claim. Williams Boulevard does not otherwise provide any evidence of willful or wanton disregard by State Farm that would justify punitive damages under Iowa Code § 668A.1. State Farm is entitled to summary judgment on Williams Boulevard's claim for punitive damages.

## VI. CONCLUSION

For the reasons stated herein:

1. State Farm's motion (Doc. 10) for summary judgment is **denied** as to the breach of contract claim and **granted** as to the bad faith claim and as to any claim for consequential or punitive damages.

2. This case will proceed to trial, on the breach of contract claim only, beginning January 8, 2024.

**IT IS SO ORDERED.**

**DATED** this 17th day of November, 2023.

_____
Leonard T. Strand, Chief Judge